IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 10, 2021

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**JOLY GERMINE**, also known as Yonyon,<br><br>**ELIANDE TUNIS**,<br><br>**JOCELYN DOR**, and<br><br>**WALDER ST. LOUIS**,<br><br>Defendants. | Case No. _____<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371<br>(Conspiracy to Violate the Export Control Reform Act, 50 U.S.C. § 4819, and to Defraud the United States)<br><br>50 U.S.C. § 4819<br>(Export Control Reform Act)<br><br>18 U.S.C. §§ 554(a), 2<br>(Smuggling, Aiding and Abetting, Causing an Act to be Done)<br><br>18 U.S.C. §§ 1956(a)(3)(A)), 2<br>(Laundering of Monetary Instruments, Aiding and Abetting, Causing an Act to be Done)<br><br>**Filed Under Seal** |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

**(Conspiracy to Violate the Export Control Reform Act, 50 U.S.C. § 4819)**

At all times material to this Indictment:

### INTRODUCTION

*400 Mawozo and Haiti Kidnappings*

1. 400 Mawozo is a Haitian gang and criminal organization that operated in the Croix-

1

des-Bouquets area to the east of Port-au-Prince, Haiti.

2.  From at least on or about January 12, 2020, until the present, 400 Mawozo was engaged in armed kidnappings of U.S. citizens in Haiti for ransom.

3.  On or about October 16, 2021, sixteen U.S. citizens and one Canadian citizen were kidnapped near Port au Prince, Haiti, including five children, one as young as eight months old. The victims were part of a missionary organization and had been taking a bus to visit a local orphanage. While the victims were returning therefrom, the kidnappers forced at gunpoint the group's bus driver to stop, and they took control of the bus and its occupants.

4.  On or about October 16, 2021, a representative of the missionary organization received a phone call from an individual claiming to be the leader of the kidnappers. The individual stated that he had the victims and was holding them for ransom of $1 million each ($17 million total). The individual told the representative that he would be in touch regarding next steps.

5.  On or about October 18, 2021, Haitian social media began to share reporting that a specific gang, known locally as 400 Mawozo, had taken credit for the kidnapping and was making publicly known the ransom demand. On or about October 22, 2021, a Facebook video post showed a leader of the gang, referred to herein as Individual 2, at a local funeral for gang members who had been killed, stating that he intended to kill the Americans if he did not receive his money. On or about November 17, 2021, a Facebook video post showed Individual 2 further claiming credit for the kidnapping.

6.  As of the date of this Indictment, the hostage takers have had several ransom calls with a representative of the missionary organization. The hostage takers have released only two of the victims.

## BACKGROUND

### *The Export Control Reform Act*

7.  The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "[t]he national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. *Id.* at § 4812(b). ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. *Id.* at § 4813(a).

8.  Pursuant to ECRA, the Department of Commerce ("DOC") reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

9.  The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end

user, and end use.

10.     Relevant here, the DOC is responsible for licensing the export of a variety of firearms and related commodities from the United States. When required, these licenses are issued by the DOC's Bureau of Industry and Security ("BIS"), which is located in the District of Columbia.

11.     Relevant here, and as described further herein, the rifles and pistols purchased in furtherance of the conspiracy have been classified by BIS under ECCN 0A501.a, the shotgun purchased in furtherance of the conspiracy has been classified by BIS under ECCN 0A502, and the ammunition purchased in furtherance of the conspiracy has been classified by BIS under ECCN 0A505.a. Items under these ECCNs are controlled for the following reasons: (i) National Security, Regional Stability, and Firearms Convention (ECCN 0A501.a); (ii) Crime Control and Firearms Convention (ECCN 0A502); and Firearms Convention, National Security, and Regional Stability (ECCN 0A505.a). Accordingly, export of these weapons from the United States to Haiti requires an export license issued by BIS.

12.     Pursuant to 50 U.S.C. § 4819(a)(1), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this subchapter or of any regulation, order, license, or other authorization issued under this subchapter, including any of the unlawful acts described in paragraph (2)." Such unlawful acts include, among other acts, that "[n]o person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, or conduct negotiations to facilitate such activities for, any item exported or to be exported from the United States, or that is otherwise subject to the [EAR], with knowledge that a violation of this subchapter, the [EAR], or any order, license or authorization issued thereunder, has occurred, is about to occur, or is intended to occur

in connection with the item unless valid authorization is obtained therefor." *Id.* at § 4819(a)(2). Pursuant to 50 U.S.C. § 4819(b), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids and abets in the commission of, an unlawful act described in subsection (a)" shall be guilty of a crime.

### *The Gun Control Act*

13.    The Gun Control Act, 18 U.S.C. § 921 *et seq.*, requires a license to deal in firearms from the Attorney General, who is located in the District of Columbia. Firearms dealers are required to fill out, keep, and maintain paperwork, *i.e.*, a Firearms Transaction Record, related to certain firearms sales, and make the same available to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which is also located in the District of Columbia. Among other things, it is illegal under the Gun Control Act to make a false statement during the purchase of a firearm. *See* 18 U.S.C. § 922(a)(6).

### THE DEFENDANTS

14.    **JOLY GERMINE**, also known as Yonyon ("GERMINE") is a Haitian national and a member of 400 Mawozo. GERMINE is incarcerated in Haiti, but still serves as a leader of the organization in Haiti and directs operations from prison using unmonitored cellular phones.

15.    Individual 2 is a Haitian national and a leader of 400 Mawozo. Individual 2 lives in Haiti. Individual 2 has appeared on videos posted on social media, stated his name, and declared himself as a leader of 400 Mawozo, including videos posted on social media sites YouTube and Facebook on or about October 22, 2021. Individual 2 has given video recorded statements to the Haitian press in which he claims to be a leader of 400 Mawozo, including in videos posted by press organizations on or about April 13, 2020, and September 6, 2021. On or about November 17, 2021, Individual 2 claimed responsibility for kidnapping the sixteen U.S. citizens on or about October

16, 2021.

16. **ELIANDE TUNIS** ("TUNIS") is a U.S. citizen, born in Haiti, who resides in Florida and is a member of 400 Mawozo.

17. **JOCELYN DOR** ("DOR") is a Haitian citizen, who resides in Florida. DOR holds a Florida carrying a concealed weapon ("CCW") permit, and, as a result, the Florida mandatory waiting period to possess a firearm is inapplicable to DOR.

18. **WALDER ST. LOUIS** ("ST. LOUIS") is a Haitian citizen, who resides in Florida. ST. LOUIS holds a Florida CCW permit, and, as result, the Florida mandatory waiting period to possess a firearm is inapplicable to ST. LOUIS.

## JURISDICTION AND VENUE

19. Acts and omissions in furtherance of the offenses under investigation occurred within the District of Columbia.

## THE CONSPIRACY

20. Beginning at least on or about September 12, 2021, and continuing until on or about November 8, 2021, GERMINE, TUNIS, DOR, ST. LOUIS, and others known and unknown to the Grand Jury, in the District of Columbia and elsewhere, knowingly combined, conspired, confederated, and agreed together and with each other (1) to commit a crime against the United States and its agency, DOC, to wit, to export and cause the exportation of goods from the United States to Haiti without having first obtained the required licenses from BIS, in violation of 50 U.S.C. § 4819 (ECRA), and (2) to defraud the United States by interfering with and obstructing a lawful government function, that is, the enforcement by ATF of laws and regulations related to the purchase and sale of firearms, by means of deceit, craft, trickery, and dishonesty.

*Goals*

21.  The goals and purposes of the conspiracy were, among others:

    a.  to acquire U.S.-origin goods, specifically firearms and ammunition, from the United States to supply to members of the 400 Mawozo gang in Haiti;

    b.  to support the gang activities of 400 Mawozo, including the kidnapping with firearms of individuals for ransom;

    c.  to evade the prohibitions and licensing requirements of ECRA;

    d.  to conceal from United States licensed firearm dealers and, in turn from the United States government and its agency, ATF, that the U.S.-origin goods were destined for Haiti so as to avoid penalties and disruption of the illegal activity; and

    e.  to frustrate the laws and regulations of the United States.

*Manner and Means*

22.  It was further a part of the conspiracy that defendants used the following manner and means to achieve the goals of the conspiracy:

    a.  TUNIS regularly contacted the phones utilized by GERMINE and Individual 2.

    b.  Individual 2 would instruct GERMINE regarding the types of firearms that 400 Mawozo needed.

    c.  TUNIS, DOR, and ST. LOUIS obtained from GERMINE specifications for weapons and ammunition that GERMINE and Individual 2 wanted to be sent to Haiti for use by 400 Mawozo.

    d.  TUNIS purchased, and instructed DOR and ST. LOUIS to purchase, firearms (rifles, pistols, and shotguns) and ammunition for 400 Mawozo, all of which

required a license for export.

e. TUNIS, DOR, and ST. LOUIS filled out ATF forms falsely stating that they were the "actual buyers" of the firearms and that they were not buying the firearms for another person, when in fact, they intended to ship and did ship the firearms to Haiti for use by 400 Mawozo.

f. TUNIS, DOR, and ST. LOUIS failed to obtain valid export license(s) from BIS for their purchases.

g. TUNIS, DOR, and ST. LOUIS shipped and caused the firearms and ammunition to be shipped to Haiti, or attempted the same, in part by smuggling. Specifically, certain of the firearms and ammunition were wrapped in garbage bags, loaded into large multi-gallon drums/barrels, and then covered with various products such as clothes, shoes, and Gatorade to hide the presence of firearms and ammunition.

h. TUNIS, DOR, and ST. LOUIS conducted and attempted to conduct financial transactions affecting interstate or foreign commerce, to pay for the firearms and ammunition they were purchasing.

i. In order to fund this conspiracy, at least in part, TUNIS obtained money from V-1, an elderly individual for whom TUNIS worked, and caused the same to be wired to TUNIS'S bank account.

j. After learning of a law enforcement investigation into their activities, TUNIS, DOR, ST. LOUIS, and others known and unknown to the grand jury, moved or concealed, and attempted to do the same, firearms and ammunition purchased in furtherance of the conspiracy.

*Overt Acts*

23.  In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

    a.  On or about September 17, 2021, GERMINE sent a series of text messages to TUNIS including a photograph of DOR's Florida CCW permit, a photograph of a "SVD Romak sniper 7.62x54r" rifle on sale for $2,000, and a cell phone contact card for DOR.

    b.  On or about September 23, 2021, GERMINE and DOR had a 14-minute call.

    c.  On or about September 28, 2021, GERMINE and TUNIS exchanged a series of WhatsApp text and audio messages related to purchases of firearms by DOR and ST. LOUIS.

    d.  On or about September 28, 2021, an individual in Haiti wired $2,000 to DOR.

    e.  On or about September 29, 2021, an individual in Haiti wired $2,500 to DOR.

    f.  On or about October 4, 2021, GERMINE had an 86-minute call with TUNIS, during which GERMINE also placed a three-way call to DOR, who was on the call for 46 minutes.

    g.  On or about October 4, 2021, TUNIS sent $1,000 to DOR via an online payment application.

    h.  On or about October 5, 2021, TUNIS withdrew $15,000 from a bank account registered in her name and wired the same to DOR.

    i.  On or about October 5, 2021, TUNIS and DOR exchanged a series of

WhatsApp text and audio messages while DOR was purchasing firearms.

j. On or about October 5, 2021, DOR sent TUNIS an audio message via WhatsApp in which DOR stated how a particular rifle can be broken down for shipment.

k. On or about October 6, 2021, GERMINE placed two phone calls to ST. LOUIS.

l. On or about October 6, 2021, TUNIS withdrew $16,000 from a bank account registered in her name.

m. On or about October 6, 2021, TUNIS forwarded to ST. LOUIS an audio message via WhatsApp, in which GERMINE admonished ST. LOUIS for his failure to follow GERMINE's instructions to purchase firearms and praised DOR for quickly following similar orders.

n. On or about October 9, 2021, TUNIS took pictures of the barrels she had used to smuggle firearms and ammunition.

o. On or about October 11, 2021, ST. LOUIS sent an audio message via WhatsApp to TUNIS stating that he had sent two barrels containing firearms to Haiti.

p. On or about October 11, 2021, TUNIS arranged for an individual in Haiti to wire $2,500 to ST. LOUIS.

q. On or about October 18, 2021, GERMINE had a 7-minute call with Individual 2, and then immediately thereafter placed an 8-minute call to TUNIS.

r. On or about October 19, 2021, TUNIS took pictures of the barrels she had used to smuggle firearms and ammunition and sent the same to GERMINE.

s. On or about October 20, October 22, and October 28, 2021, GERMINE and ST. LOUIS exchanged iMessages.

t.  On or about the following dates, TUNIS, DOR, and ST. LOUIS purchased the following firearms:

| Make | Model | Type | Caliber | Purchased On or About |
|---|---|---|---|---|
| Century Arms | VSKA w/ Red Dot Sight | Rifle | 7.62x39mm | 9/28/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 9/29/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 10/1/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 10/1/2021 |
| Century Arms | VSKA w/ Red Dot Sight | Rifle | 7.62x39mm | 10/5/2021 |
| Riley Defense | Rak 47 | Rifle | 7.62x39mm | 10/5/2021 |
| Barrett Manufacturing | 82A1 | Rile | 50 | 10/6/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 10/6/2021 |
| Century Arms | WASR-10 | Rifle | 7.62x39mm | 10/6/2021 |
| Palmetto Arms | PA15 | Rifle | 5.56 | 10/6/2021 |
| Springfield Armory | M1A | Rifle | 308 | 10/6/2021 |
| SAR | SAR-9 | Pistol | 9mm | 10/11/2021 |
| Ruger | Five Seven | Pistol | 5.7x28mm | 10/14/2021 |
| Century Arms | Centurion 12 Gauge | Shotgun | Shotgun | 10/16/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 10/17/2021 |
| Century Arms | VSKA | Rifle | 7.62x39mm | 10/17/2021 |
| Century Arms | VSKA w/ Red Dot Sight | Rifle | 7.62x39mm | 9/28/2021 |

u.  On or about the following dates, TUNIS, DOR, and ST. LOUIS falsely filled out ATF Form 4473 in order to purchase firearms:

| Date of Form | Buyer | Location of Dealer |
|---|---|---|
| 9/28/2021 | DOR | Orlando, FL |
| 9/29/2021 | DOR | Orlando, FL |
| 10/1/2021 | DOR | Orlando, FL |
| 10/5/2021 | DOR | Apopka FL |
| 10/6/2021 | DOR | Orlando, FL |
| 10/6/2021 | ST. LOUIS | Miami, FL |
| 10/11/2021 | TUNIS | Pompano Beach, Fl |
| 10/16/2021 | ST. LOUIS | Miami, FL |

11

**(Conspiracy to Violate the Export Control Reform Act, 50 U.S.C. § 4819,** in violation of Title 18, United States Code, Section 371)

## COUNTS TWO THROUGH SEVENTEEN

**(Export Control Reform Act, 50 U.S.C. § 4819)**

24. The allegations in Paragraphs 1 through 23 of this Indictment are incorporated and re-alleged by reference herein.

25. On or about the dates listed below, defendants GERMINE, TUNIS, DOR, and ST. LOUIS did knowingly and willfully export, attempt to export, and cause to be exported goods, as described in each Count below, from the United States to Haiti, without having first obtained the required licenses from BIS, located in the District of Columbia, all in violation of ECRA:

| Count | Make | Model | Type | Caliber | On or About |
|---|---|---|---|---|---|
| 2 | Century Arms | VSKA w/ Red Dot Sight | Rifle | 7.62x39mm | 9/28/2021 |
| 3 | Century Arms | VSKA | Rifle | 7.62x39mm | 9/29/2021 |
| 4 | Century Arms | VSKA | Rifle | 7.62x39mm | 10/1/2021 |
| 5 | Century Arms | VSKA | Rifle | 7.62x39mm | 10/1/2021 |
| 6 | Century Arms | VSKA w/ Red Dot Sight | Rifle | 7.62x39mm | 10/5/2021 |
| 7 | Riley Defense Inc | Rak 47 | Rifle | 7.62x39mm | 10/5/2021 |
| 8 | Barrett Manufacturing Inc | 82A1 | Rile | 50 | 10/6/2021 |
| 9 | Century Arms | VSKA | Rifle | 7.62x39mm | 10/6/2021 |
| 10 | Century Arms | WASR-10 | Rifle | 7.62x39mm | 10/6/2021 |
| 11 | Palmetto Arms | PA15 | Rifle | 5.56 | 10/6/2021 |
| 12 | Springfield Armory | M1A | Rifle | 308 | 10/6/2021 |
| 13 | SAR | SAR-9 | Pistol | 9mm | 10/11/2021 |
| 14 | Ruger | Five Seven | Pistol | 5.7x28mm | 10/14/2021 |
| 15 | Century Arms | Centurion 12 Gauge | Shotgun | Shotgun | 10/16/2021 |
| 16 | Century Arms | VSKA | Rifle | 7.62x39mm | 10/17/2021 |
| 17 | Century Arms | VSKA | Rifle | 7.62x39mm | 10/17/2021 |

**(Export Control Reform Act, Aiding and Abetting, Causing an Act to be Done**, in violation of Title 50, United States Code, Section 4819)

## COUNT EIGHTEEN

### (Smuggling)

26. The allegations in Paragraphs 1 through 23 of this Indictment are incorporated and re-alleged by reference herein.

27. On or about October 9, 2021, in the District of Columbia and elsewhere, defendants GERMINE, TUNIS, DOR, and ST. LOUIS did fraudulently and knowingly export and send, and attempt to export and send, firearms and ammunition from the United States to Haiti, and received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, or sale of such firearms and ammunition, prior to exportation, knowing the same to be intended for exportation contrary to law, all contrary to Title 50, United States Code, Section 4819, a law and regulation of the United States.

(**Smuggling, Aiding and Abetting, Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 554(a), 2)

## COUNT NINETEEN

### (Smuggling)

28. The allegations in Paragraphs 1 through 23 of this Indictment are incorporated and re-alleged by reference herein.

29. On or about October 11, 2021, in the District of Columbia and elsewhere, defendants GERMINE, TUNIS, DOR, and ST. LOUIS did fraudulently and knowingly export and send, and attempt to export and send firearms and ammunition from the United States to Haiti, and received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, or sale of such firearms and ammunition, prior to exportation, knowing the same to be intended for exportation contrary to law, all contrary to Title 50, United States Code, Sections 4819, a law and regulation of the United States.

(**Smuggling, Aiding and Abetting, Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 554(a), 2)

## COUNT TWENTY

### (Smuggling)

30. The allegations in Paragraphs 1 through 23 of this Indictment are incorporated and re-alleged by reference herein.

31. On or about October 19, 2021, in the District of Columbia and elsewhere, defendants GERMINE, TUNIS, DOR, and ST. LOUIS did fraudulently and knowingly export and send, and attempt to export and send, firearms and ammunition from the United States to Haiti, and received, concealed, bought, sold, and in any manner facilitated the transportation, concealment, or sale of such firearms and ammunition, prior to exportation, knowing the same to be intended for exportation contrary to law, all contrary to Title 50, United States Code, Section 4819, a law and regulation of the United States.

(**Smuggling, Aiding and Abetting, Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 554(a), 2)

## COUNTS TWENTY-ONE THROUGH TWENTY-EIGHT

### (Laundering of Monetary Instruments)

32. The allegations in Paragraphs 1 through 23 of this Indictment are incorporated and re-alleged by reference herein.

33. On or about the dates described below, in the District of Columbia and elsewhere, defendants described below, with the intent to promote the carrying on of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented, to be property used to conduct or facilitate specified unlawful activity, to wit: defendants engaged in interstate wire transactions in support of

the conspiracy to export firearms and ammunition from the United States, as described in Count One.

| COUNT | ON OR ABOUT | APPROXIMATE AMOUNT | DEFENDANTS |
|---|---|---|---|
| 21 | September 28, 2021 | $2,000 | DOR |
| 22 | September 29, 2021 | $2,500 | DOR |
| 23 | October 4, 2021 | $950 | TUNIS & DOR |
| 24 | October 4, 2021 | $50 | TUNIS & DOR |
| 25 | October 5, 2021 | $15,000 | TUNIS & DOR |
| 26 | October 6, 2021 | $6,000 | TUNIS |
| 27 | October 6, 2021 | $10,000 | TUNIS |
| 28 | October 11, 2021 | $2,500 | TUNIS & ST. LOUIS |

(**Laundering of Monetary Instruments, Aiding and Abetting, Causing an Act to be Done**, in violation of Title 18, United States Code, Sections 1956(a)(3)(A), 2)

## FORFEITURE ALLEGATIONS

1. Upon conviction of the offenses alleged in Counts One through Twenty-Eight of this Indictment, defendants shall forfeit to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(A) & (C), and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

2. Upon conviction of the offenses alleged in Counts Two through Twenty of this Indictment, defendants shall forfeit to the United States arms or munitions of war or other articles and any vessel, vehicle, or aircraft containing the same or which has been used in exporting or

attempting to export such arms or munitions of war or other articles relating to these offenses, pursuant to Title 22, United States Code, Section 401 and Title 28, United States Code, Section 2461(c).

3.      Upon conviction of the offenses alleged in Counts One through Twenty-Eight of this Indictment, defendants shall forfeit to the United States any property, real or personal, involved in this offense, or any property traceable to such property pursuant to Title 18, United States Code, Section 982(a)(1). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, involved in this offense, and any property traceable to such property.

4.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property that cannot be divided without difficulty;

defendants shall forfeit to the United States any other property of defendants, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**Criminal Forfeiture,** pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), Title 22, United States Code, Section 401, Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p).

A TRUE BILL

FOREPERSON

*Matthew M. Graves/SM*

Attorney of the United States in
and for the District of Columbia