THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00699-JDB |
| | : | |
| **JOLY GERMINE, et al.,** | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW ATTORNEYS, Allen H. Orenberg and Elita Amato, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Joly Germine. There can be no dispute that this court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a). When fashioning an appropriate sentence, the court is requested to impose a sentence which properly reflects the 18 U.S.C. §3553(a)(1-7) factors. Consequently, Mr. Germine asks the Court to impose a term of imprisonment no longer than 210 months.

**I.   Case Background**

On January 31, 2024, and near the conclusion of a bench trial, Mr. Germine voluntarily pled guilty to counts 1-48 of the Second Superseding Indictment [ECF 73] charging him in count 1 with Conspiracy to Violate the Export Control Reform Act (50 USC 4819), counts 3-17 with violation of the Export Reform Act (50 USC 4819), count 2 with Conspiracy to Commit Smuggling and to Defraud the United States (18 USC 371), counts 18-20 with Smuggling (50 USC 554(a)), counts 21-34 with Laundering of

Monetary Instruments (18 USC 1956(a)(2)(A) and counts 35-48 with Laundering of Monetary Instruments (18 USC 1956(a)(2)(A).

A sentencing hearing is scheduled for June 24, 2024 at 11:00 a.m.

The U.S. Probation Office is recommending a (combined) sentence of 240 months imprisonment, 36 months supervised release and a special assessment of $4,800.00. (A fine is not recommended) *See Sentencing Recommendation.* [ECF 220] Mr. Germine and counsel have reviewed the (draft & final) PSR, as well as the (aforementioned) recommendation.

Mr. Germine asks the court to adopt the arguments herein and impose a sentence of 210 months.

**II.     Objections to the Presentence Investigation Report ("PSR")**

The following are the unresolved objections to the PSR:

A.     Paragraph No. 110 – Adjustment for Acceptance of Responsibility

Mr. Germine objects to the PSR recommendation that he should not receive "acceptance of responsibility points." Mr. Germine warrants a reduction for acceptance of responsibility pursuant to U.S.S.G.3E1.1(a). He is not seeking the additional one level reduction pursuant to 3E1.1(b). As Application Note 2 states "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction." Thus, the reduction is not merely based upon saving the Government the resources and time expenditure of not going to trial but rather on actual acceptance of guilt. Here Mr. Germine actually accepted responsibility and plead guilty, albeit prior to cross examination of the Government's last witness.

Hence, he was not "convicted by trial," but rather through his own admissions and acceptance of guilt.

Mr. Germine did not put the Government through the ringer of cross examining him at trial, nor did they have to provide a closing argument. Further, he waived a right to a trial by Jury, thereby lessening the impact on the community as well as made it easier in some ways for the Government to put on their case.

Upon his arrest by U.S. law enforcement, on the airplane ride from Haiti to the United States, he provided a full post-arrest statement in which he admitted his involvement in the offense. Also, once he was in Virginia, he assisted law enforcement by making telephone calls back to Haiti to request the release of a kidnapped individual. That person was promptly released. As Application Note 2 states, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." However, again that is for persons who went to trial and did not plead guilty. Here, Mr. Germine admitted his guilt during the plea hearing. *United States v. Parker*, 903 F.2d 91 (2nd Cir. 1990) found the following to be persuasive underlying rational for the 2 level reduction for acceptance of responsibility for anyone who accepts guilt regardless of when: "One of the goals of sentencing is rehabilitation, see, e.g., *United States v. Grayson*, 438 U.S. 41, 45-48, 98 S.Ct. 2610, 2613-14, 57 L.Ed.2d 582 (1978); *Williams v. New York*, 337 U.S. 241, 247-48, 69 S.Ct. 1079, 1083-84, 93 L.Ed. 1337 (1949), and a defendant's admission of responsibility or expression of contrition 'is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence,'

*Smith v. Wainwright*, 664 F.2d 1194, 1196 (11th Cir.1981). See also, *United States v. Jones*, 997 F.2d 1475 (D.C. Cir. 1993) (defendant went to trial, then afterwards acknowledged his wrongdoing, yet sentencing Judge gave him guideline reduction for acceptance of responsibility but sentenced 6 months higher than low end of that lower guideline range) (appellate Court held that Judge who granted a defendant credit for acceptance of responsibility, thereby putting the defendant in a lower range under the Sentencing Guidelines, could take into account the defendant's decision to go to trial when sentencing within the new, lower range).

    **B.**    <u>**Objections to the Offense Level Computations**</u>

    <u>Paragraph Nos. 92, 99 & 106</u>:

All Counts should group together including 2B. ATF is the Government and therefore, not a separate victim. The victim of Counts 1-48 is the United States government, thus all of the counts of conviction should be grouped pursuant to USSG §3D1.2(b). Beginning in Paragraph No. 92 of the PSI, the probation officer indicates the ATF is the victim defrauded in the "pseudo" conspiracy count (Count 2B) and distinguishes between this government agency and the U.S. Government, the victim in the other counts. Since the ATF is a U.S. Government agency, the victim in this count is still the U.S. Government. Thus, all the counts should be grouped into one group. (Group 1)

    <u>Paragraph No. 93: Base Offense Level</u>

USSG §2S1.1, Application Note 2(B), states that in order for USSG §2S1.1(a)(1) to apply, the defendant must have committed the underlying offense or be accountable

for the underlying offense under USSG §1B1.3(a)(1)(A). The fact that the defendant was involved in laundering criminally derived funds after the commission of the underlying offense, without additional involvement in the underlying offense, does not establish that the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the underlying offense.

Therefore, since the Government did not prove at trial beyond a reasonable doubt that Mr. Germine participated in the kidnappings of U.S. citizens, or can be held accountable for the kidnappings based on relevant conduct, then USSG §2A4.1 can't be used to determine his total offense level for Group 1. Instead, the Court should use USSG §2M5.2 like it did in the sentencing of co-defendant Eliande Tunis. Doing so will result in a Total Offense Level of 30 (Base Offense Level of 26, +4 levels for Role as an Organizer/Leader, and a two 2-level downward adjustment for Acceptance of Responsibility). Based on a Total Offense Level of 28 and a Criminal History Category of I, Mr. Germine's advisory guidelines range is 78-97 months. Mr. Germine warrants the 2 level downward adjustment for acceptance of responsibility.

### III. Smith Departure as a Deportable Alien

Mr. Germine is not a United States citizen but rather a citizen of Haiti. He was brought to the United States solely for the purpose of facing the charges in this case and his second case. Therefore, it is inevitable that he will be deported back to Haiti.

His status as a deportable alien will cause an increase in the severity of his confinement because he will almost certainly be ineligible for the benefits of 18 U.S.C. §3624. Such section directs the Bureau of Prisons to assure that prisoners spend part

of the last portion of their sentences, up to one year, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry in the community." In *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), the United States Appellate Court for the District of Columbia found that a downward departure from the recommended range under the Sentencing Guidelines may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his departure. *See also, Lartey v. Department of Justice*, 790 F.Supp. 130 (W.D. La 1992). As Mr. Germine is not a U.S. citizen and is deportable, he will not be afforded placement of less confinement during the last portion of his sentence, and thereby will suffer an increase in the severity of his sentence solely based on his immigration status.

    Nor will he be able to receive any potential credit to his sentence by participating in any Bureau of Prison programs while completing his sentence. The First Step Act provides opportunities for US citizens to receive reductions in their sentences for successful participation in certain work and education programs. However, if Mr. Germine participates in the same programs, education classes, and employment opportunities while serving his sentence with the Bureau of Prisons he will not be able to receive the jail time reduction that US citizens would receive. A departure is warranted to equalize his situation.

Mr. Germine moves for a 6 month reduction pursuant to *Smith*. Frankly, a greater reduction than 6 months is warranted now that the First Step Act provides a greater avenue for a sentence reduction.

## IV. Framework And The Guidelines Are Not Mandatory

The court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[1] This represents a cap above which the Court is *statutorily prohibited* from sentencing - even when a far greater sentence is

---

[1] 18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989) (Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

### V.  Nature and Circumstances of the Offense and History and Characteristics of Mr. Germine

#### A.  The Nature and Circumstances of the Offense

Mr. Germine voluntarily pled guilty to Counts 1-48 of the Second Superseding Indictment, [ECF 73] charging him in count 1 with Conspiracy to Violate the Export Control Reform Act (50 USC 4819), counts 3-17 with violation of the Export Reform Act (50 USC 4819), count 2 with Conspiracy to Commit Smuggling and to Defraud the United States (18 USC 371), counts 18-20 with Smuggling (50 USC 554(a)), counts 21-

34 with Laundering of Monetary Instruments (18 USC 1956(a)(2)(A) and counts 35-48 with Laundering of Monetary Instruments (18 USC 1956(a)(2)(A).

### B. History and Characteristics of Mr. Germine

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Germine also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, ¶¶120-147.  In addition to "Personal and Family Data" contained in the PSR, counsel notes the following information:

Mr. Germine was born and raised in Haiti.  His parents left him in Haiti when they came to live in the United States.  He was raised and taken care of by an Aunt and Uncle.  He had many cousins to play with growing up however, not having his parents with him surely impacted him.

When he was a young man, he received lands and invited farmers to grow crops on the land, including corn, beets, beans and other vegetables. Haiti was a poor country even when Mr. Germine was growing up. He helped his fellow Haitians by allowing farmers to farm on his lands. As an enterprising young man, he also looked for other businesses to engage in, including a clothing business, of bringing clothes from the United States to sell in Haiti.

Mr. Germine genuinely tried to help his countrymen, especially those that did not have much. The Haitian government did not provide services and resources to the poor like we have in this country, and Mr. Germine tried to fill the gap.

As he also describes in his letter (exhibit) to the Court, he became involved in helping protect people who were being physically harmed by others. He was able to encourage others to join his band of brothers in protecting persons from the violence. Because of his success and influence, he later became involved in politics as well. Also, accompany this Memorandum is a letter from his mother, Mrs. Jolita Jus.

## VI.     Respect for the Law and Deterrence

Mr. Germine exercised his Constitutional right to a (bench) trial. His personal history and characteristics as described throughout this memorandum, as well as noted in "support" letters, it is improbable that he will participate in criminal activities in the future. There are numerous reasons to be optimistic that Mr. Germine will not engage in further criminal behavior, including the prospect of a lengthy prison sentence and the support of his family. He is determined to be a peaceful, productive and responsible member of his community. Any prison sentence longer than 17.5 years will have no greater effect toward the goals of sentencing than a (combined) sentence of 210 months imprisonment.

## VII.    The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Germine's criminal convictions are serious and will likely have irreparable consequences on the victims. However, the Court should not impose a sentence which would result in an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

The co-defendants in this case have been sentenced as follows:

      a.      Elianda Tunis: Sentenced on June 5, 2024, to 150 months (12 years, 6 months) as to each of Counts 1ss, 3ss-17ss and 21ss-48ss; 60 months (5 years) as to Count 2ss; and 120 months (10 years) as to each of Counts 18ss-20ss. All terms of incarceration run concurrently, with credit for time served. Followed by 36 months (3 years) of supervised release as to each of counts 1ss-48ss. All terms of supervised release to run concurrently. $100 Special Assessment as to each count (for a total of $4,800).

      b.      Jocelyn Dor: Sentenced on February 28, 2024, to sixty (60) months as to Count 1s and sixty (60) months as to each of Counts 2s, 7s, 12s, 24s, and 27s. Terms of imprisonment to run concurrently, with credit for time served. Thirty-Six (36) months of supervised release as to each of Counts 1s, 2s, 7s, 12s, 24s, and 27s. Terms of supervised release to run concurrently. Special assessment of $100 on each count (for a total of $600).

      c.      Walder St. Louis: Sentenced on March 14, 2024, to Thirty-Six (36) months as to Count 1s and Thirty-Six (36) months as to each of Counts 9s, 10s, 11s, & 31s. Terms of imprisonment to run concurrently, with credit for time served. Thirty-Six (36) months of supervised release as to each of Counts 1s, 9s, 10s, 11s, and 31s. Terms of supervised release to run concurrently. Special assessment of $100 on each count (for a total of $500).

Neither Mr. Dor nor Mr. St. Louis were required to plead guilty to money laundering counts that alleged proceeds from ransom activities, although the evidence relating to the source of gang funds and their awareness that the funds they used to

purchase firearms was clear. And, with respect to Mr. St. Louis, the government negotiated a plea agreement in which the parties agreed to an Offense Level of 26, with no specific offense characteristics, so that after a three-level reduction for acceptance of responsibility, St. Louis's Final Offense Level was 23. This was before consideration of any further reduction for his cooperation in this matter. Yet, as it is clear from the description of the offense conduct in the PSR, Mr. St. Louis had an integral role in this criminal venture as did Ms. Tunis and Mr. Dor.

The purpose in highlighting the sentences of the co-defendants is intended to put into perspective why any sentence longer than 20 years for Mr. Germine will be disproportionate and, respectfully, unreasonable. While the criminal conduct of the other co-defendants may be less than that of Mr. Germine, it was only marginally so.

The fact that Messrs. Germine, Dor, St. Louis and Ms. Tunis engaged in criminal conduct, sometimes together, sometimes apart and sometimes the conduct was different, is of little consequence. Each knew they were involved in a joint venture and each knew that the guns were intended for the gang and each knew the gang was involved in illegal activities such that the monies received from the gang were from an illegal source. Notwithstanding Mr. St. Louis' cooperation deal, each co-defendant is essentially equally culpable for this criminal enterprise. Our criminal justice system rewards cooperators such as Mr. St. Louis and, frankly, prosecutors often depend on the testimonies of cooperators. But cooperation "credit" does not mean that the conduct is any less serious than it was at the time it was engaged in.

## VIII. The Kinds of Sentences Available and the Defendant's Sentencing Proposal

According to the PSR, Mr. Germine is deemed a total offense level of 43, with a criminal history category of I. The results in a guidelines "life" sentence. However, as noted herein-above, the U.S. Probation Office is recommending a (combined) sentence of 240 months imprisonment, 36 months supervised release and a special assessment of $4,800.00. (A fine is not recommended) *See Sentencing Recommendation.* [ECF 220]

Of course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered. Congressional enactment, as opposed to the administrative guidelines from the Sentencing Commission. This court is required to consider other factors set out in 18 U.S.C. § 3553 (a). The purposes of sentencing include punishment based on the nature and circumstances of the offense, general deterrence, specific deterrence, to protect the public from further crimes of the defendant, and rehabilitation. A punishment of prison time in excess of 20 years (as recommended by the U.S. Probation Office) will have the exact opposite effect from what is in the interest of justice and will not conform with the instructions set forth in 18 U.S.C. § 3553 (a).

## CONCLUSION

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Germine respectfully asks this court to use its discretion to fashion a sentence which takes into account the unique circumstances of his case.

Mr. Germine submits a sentence of 210 months imprisonment is sufficient, but not greater than necessary, to comply with" the purposes of punishment, as well as both specific and general deterrence.

Mr. Germine is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in a longer period of federal imprisonment. Mr. Germine recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions. The devastating and irreparable consequences to his family, are more than enough incentive for him to respect and comply with all aspects of any sentence imposed.

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by the recommended sentence herein.

Respectfully, for the foregoing reasons and any other reasons which may appear just and proper, Mr. Germine asks the court to impose a (combined) sentence of 210 months imprisonment, 36 months supervised release and a special assessment of $4,800.00. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the court to underscore, for Mr. Germine and for the community, the seriousness of the offense

for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, Mr. Germine is asking the court for the following recommendation:

1. A judicial recommendation to the Federal Bureau of Prisons for designation to a facility in the South Florida region.

Respectfully submitted,

THE ORENBERG LAW FIRM, LLC

_____
Allen H. Orenberg, Bar No. 395519
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Telephone:   (301) 807-3847
Fax:             (240) 238-6701
aorenberg@orenberglaw.com
Counsel to Joly Germine

_____-s-_____
Elita C. Amato
2111 Wilson Blvd.
Suite 8th Floor
Arlington, VA 22201
Telephone:   (703) -522-5900
Fax:             (703) 997-7775
amato.law@comcast.net
Counsel for Joly Germine

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2024, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, with Exhibits, to be served by CM/ECF to case registered parties, and by e-mail to USPO Hana Field.

_____
Allen H. Orenberg